## UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY
M.L. KING JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
PO BOX 1352
NEWARK, NJ 07101-1352
(973) 645-2464

NOVALYN L. WINFIELD
BANKRUPTCY JUDGE

January 21, 2011

Stephen V. Falanga, Esq.
Connell Foley, LLP
85 Livingston Avenue
Roseland, NJ 07068

Nicholas Khoudary, Esq.
700 Route 18
East Brunswick, NJ 08816

RE:    Schaefer Salt Recovery, Inc.
Case No.:    04-36630 (NLW)
**LETTER DECISION**

This matter is before the court on remand for a determination as to whether the debtor's

attorney and/or the debtor should be sanctioned under 28 U.S.C. § 1927, Federal Rule of Bankruptcy

Procedure 9011, or § 105 of the Bankruptcy Code.

The court has jurisdiction to consider the issues before it pursuant to 28 U.S.C. § 1334 and

the Standing Order of Reference issued by the United States District Court for the District of New

Jersey on July 23, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

A.    **Procedural History**

As the parties should recall, in August 2004 in connection with the dismissal of the Chapter

7 case filed by Nicholas Khoudary ("Khoudary") on behalf of Schaefer Salt Recovery, Inc. ("SSR"),

this court determined that sanctions should be imposed against Khoudary and SSR under 28 U.S.C.

§ 1927. This court subsequently determined that it could not impose sanctions because of the

supervisory rule articulated in *Pensiero v. Lingle*, 847 F.2d 90 (3d Cir. 1988). This conclusion was

subsequently reversed in *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008).

Following remand, this court scheduled a conference call with counsel for Carol Segal

("Segal") and Khoudary as counsel for SSR to discuss the scheduling of a hearing regarding Segal's

request for imposition of sanctions. Both counsel were advised by the court to pick time-frames for

filing briefs and attending a hearing that accommodated their respective schedules. Accordingly, the

parties agreed that Segal's papers would be filed by March 27, 2009, Khoudary would file his reply

papers three weeks thereafter, and a hearing would be held on April 27, 2009.

Segal's papers were filed timely, but no reply papers were received from Khoudary prior to

the hearing date. Rather, three days prior to the hearing Khoudary sought an adjournment, which

the court declined to grant. Following the hearing, on May 14, 2009, Khoudary filed his opposition

to the imposition of sanctions. Because Khoudary's submission was not timely filed Segal's counsel

requested that the submission not be considered. The Court initially agreed, but has since

determined that Khoudary's supplemental certification and exhibits provide helpful context for

determining the proper sanction.

### B.    State Court Litigation and Intervening SSR Bankruptcies

Because Segal asks for reimbursement of the attorney fees he incurred in defending against

SSR's attempt to intervene in the tax foreclosure proceedings, it is necessary to briefly review the

history of the litigation. The facts describing the tax foreclosure proceeding are extracted from the

unpublished June 29, 2007 opinion of the Hon. John F. Malone ("Malone Opinion") and the

unpublished October 3, 2008 decision of the Appellate Division that affirmed Judge Malone

("Appellate Division Opinion") that are attached as exhibits to Khoudary's May 15, 2009 Supplemental Certification.

The Property at issue consists of three parcels collectively known as the Schaefer Salt Factory located in Union Township, New Jersey. At all times during the bankruptcy cases and the litigation in the state courts, the Property was owned by Schaefer Properties, Inc. ("SPI"). In 1985 SPI obtained a loan from the New Jersey Economic Development Authority ("NJEDA") and executed a mortgage in favor of NJEDA to secure the loan. Ultimately, following various assignments, Corestates/New Jersey National Bank ("Corestates") became the holder of the note and mortgage. After SPI defaulted on the note Corestates commenced a foreclosure action and obtained an order on September 11, 1995 permitting the previously appointed receiver to sell the Property. Corestates also commenced a separate action on the note and obtained a default judgment in the amount of $5,708,965.81 in the action. Subsequently, Huskie Portfolio, LLC ("Huskie") paid Corestates $323,705 for a portfolio of assets that included the SPI mortgage and the default judgment on the note.

In addition to its mortgage default, SPI also failed to pay its property taxes. At some point in the late 1990's Carol Segal and his successor in interest, Sherwood Group Associates, LLC (collectively "Segal") purchased tax certificates for the three SPI parcels. When SPI did not timely redeem the certificates Segal filed three separate foreclosure proceedings. Defaults were entered in all three foreclosure proceedings.[1]

---

[1] After default is entered in a tax foreclosure proceeding the plaintiff may request an Order Setting Time, Place and Amount of Redemption ("Redemption Order"). If the deadline passes without redemption occurring, the plaintiff can then apply for entry of final judgment. Significantly, although the Redemption Order fixes the date to redeem the tax lien, the tax lien can be redeemed at any time prior to entry of final judgment by the Foreclosure Unit of the Superior Court. See N.J. STAT. ANN. § 54:5-86 (2010); see also Michael G. Pellegrino & Ralph

3

Segal requested and obtained a Redemption Order with regard to one of the three parcels. The Redemption Order fixed May 3, 2004 as the date for redemption. No redemption occurred. The Superior Court determined that as of May 5, 2004 the Segal tax liens amounted to $1,793,378. In short, in early May 2004 Segal was poised to acquire the SPI property for approximately $1.8 million.

Segal was not the only party interested in the SPI property. Khoudary has stated that he became interested in the SPI property in 2002 and began evaluating it for investment purposes. It appears that Khoudary learned of Segal's tax foreclosure proceedings in February 2002, and at some point thereafter learned that Corestates held a mortgage and default judgment on the SPI property. As set forth in the Malone Opinion, Khoudary negotiated with Huskie for approximately two years in order to acquire the mortgage and default judgment. SSR's goal in acquiring Huskie's lien position was to ultimately obtain ownership of the SPI property and market it for sale. On May 5, 2004, just two days after the date for redemption of Segal's tax lien, SSR completed its acquisition of the mortgage and default judgment from Huskie. SSR paid Huskie $20,000 in cash, and agreed to pay Huskie an additional $200,000 if SSR realized a profit from its efforts to acquire the SPI property.

On May 12, 2004, approximately one week after acquiring the mortgage and default judgment from Huskie, SSR filed its Chapter 11 case, and gave notice of the bankruptcy filing to the State Court and the parties in Segal's tax foreclosure proceedings. Segal immediately moved to

---

P. Allocca, *Tax Certificates: A Review of the Tax Sale Law*, 26 SETON HALL L. REV. 1607, 1624-25 (1996).

4

dismiss the Chapter 11 case. The Chapter 11 case was filed with only a "bare petition"[2] and without benefit of counsel. By the time that Segal's motion to dismiss was heard, experienced Chapter 11 counsel had been retained, and had filed the missing schedules and statements of financial affairs. She also filed cogent opposition to Segal's dismissal motion.

At the hearing on the dismissal motion, Segal argued that the Chapter 11 case was merely a litigation tactic intended to frustrate his effort to complete the tax foreclosure action. In its defense, SSR emphasized its assessment that the SPI property was worth at least twice the amount owed of Segal's claim. Further, SSR contended that it could implement a Chapter 11 Plan of Reorganization in approximately sixty (60) das that would satisfy Segal's liens and preserve SSR's investment. This court observed that the matter before it was really a battle between two lien holders regarding acquisition of the real property, and that it appeared that SSR was using the Chapter 11 case as an offensive weapon. As a result, this court determined that the facts did not evidence an appropriate use of the Chapter 11 and entered the dismissal order provided by Segal. However, believing that dismissal was a sufficient sanction, the court struck from the order the paragraph that barred SSR from filing another bankruptcy petition for one hundred eighty (180) days from the date of the order.

Following dismissal of SSR's Chapter 11 case, on July 7, 2004, Segal filed a request for final judgment in the tax foreclosure action. At about that same time SSR filed answers to the tax foreclosure complaints and asserted its right to redeem the SPI property from the tax liens. Segal thereupon moved to strike SSR's answers as untimely, which relief was granted by the State Court

---

[2]A bare petition is a bankruptcy petition that is unsupported by the schedules of assets and liabilities and statement of financial affairs, as well as other required schedules.

5

on August 13, 2004.[3]

The very same day that the State Court struck SSR's answers, Khoudary filed a Chapter 7 case on behalf of SSR. Like the earlier Chapter 11 petition, the Chapter 7 petition was also a bare petition, unaccompanied by any schedules or the statement of financial affairs. On August 17, 2004, Segal moved to dismiss the case. The court set a hearing date for August 24, 2004. By letter dated August 18, 2004 Khoudary requested an adjournment, asserting that SSR needed to obtain counsel, and that he needed several days of recuperation following his surgery that was scheduled for August 19, 2004. To further support his request for an adjournment, Khoudary advised the court that SSR had a contract of sale for the property that would permit satisfaction of Segal's tax liens. On the return date of Segal's motion, both orally and in writing, Khoudary advised that SSR consented to dismissal of the Chapter 7 case. Affronted by what it perceived to be the unwarranted and vexatious use of a bankruptcy petition as a litigation tactic, the court agreed that dismissal of the case was appropriate, but also stated that it was imposing sanctions under 28 U.S.C. § 1927. This court thereafter determined that it could not impose sanctions because it believed that the supervisory rule articulated in *Pensiero v. Lingle*, 847 F.2d 90 (3d Cir. 1988) applied to sanctions under 28 U.S.C. § 1927. Because of its view, this court also denied Segal's motion for reconsideration.

This court's decision was affirmed on appeal to the District Court, but subsequently reversed by the Third Circuit. *In re Schaeffer Salt Recovery, Inc.,* 542 F.3d 90 (3d Cir. 2008). The Third Circuit remanded "for a determination as to whether sanctions should be imposed against Khoudary under § 1927 and/or against SSR and Khoudary under one or more of the Rules we have discussed

---

[3]Apparently, while SSR was contesting Segal's tax foreclosure it was also attempting to acquire the SPI property by scheduling a Sheriff's Sale based on the judgment it held on the SPI note. The sale was to have been held on August 18, 2004. The Chancery Court's August 13, 2004 order also barred SSR from continuing with the sale.

or, perhaps under § 105." 542 F.3d at 105.

The litigation between the parties did not end with the dismissal of the Chapter 7 case. While Segal pursued sanctions against Khoudary and SSR in the federal courts, Segal's effort to complete the tax foreclosure continued. SSR filed a second motion to intervene in the tax foreclosure proceeding which was denied. In November 2004 and January 2005 Segal obtained final judgments in all three tax foreclosure actions. It appears that SSR appealed the decision, as the Appellate Division reversed the trial court and "remanded the case for a determination of whether [SSR], as the purchaser of a redeemable interest in the property subject to a tax sale foreclosure, would gain a windfall by redeeming the Property." (Malone Opinion p. 6.) However, subsequently the Supreme Court reversed the Appellate Division, and remanded the matter to the trial court for reconsideration in light of *Simon v. Cronecker*, 189 N.J. 304 (2007). (*Id.*)

Following remand, the trial court heard expert witnesses regarding the value of the Property in order to determine whether SSR paid more than nominal consideration for its interest in the Property. (*Id.* at 8-9.) Finding that the SPI Property had a value of $6,150,000 and that SSR had acquired the mortgage and default judgment from Huskie for $20,000 and a conditional obligation to pay Huskie another $200,000, the trial court found that SSR had merely paid nominal consideration for its interest in the SPI Property. (*Id.* at 15-16.) Accordingly, the trial court denied SSR's motion to intervene and entered judgment in favor of Segal. (*Id.* at 16.)

The trial court also grounded its decision on the reality that the case before it was different from *Cronecker* because the property owner (SPI) "is a defunct corporation long out of the property," and the original mortgagee had assigned its position to Huskie. (*Id.* at 9.) Moreover, the court found it significant that since acquiring its interest in 1999 Huskie made no effort to foreclose the mortgage or collect on the default judgment. (*Id.* at 13.) As a result, the court found that, with no owner or

7

lender having a direct interest in the property, the policy of promoting the purchase of tax sale

certificates becomes paramount. (*Id.* at 14.) The count then stated that:

> To allow the proposed intervenor to redeem the Property under the
> circumstances of this case would frustrate the policy of favoring the
> use of tax sale certificates to raise municipal revenue. The effect of
> allowing a party with no connection to the owner of lender, who
> provides no benefit to the owner or lender, to enter the case at such
> a late date with a $20,000 investment would discourage investment
> in tax sale certificates. The public interest would not be served and
> one investor would be given an unfair advantage over another.

(*Id.* at 16.)

### C.    Post Remand Request for Sanctions

Segal reads the decision in *In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90 (3d Cir. 2008) as

authorizing this court to award all the attorneys' fees and costs he incurred in the two bankruptcy

cases and the state court tax foreclosure proceedings. Regarding the two SSR bankruptcy cases,

Segal notes that he incurred the cost of two dismissal motions as well as a motion for reconsideration

and appeals to the District Court and the Court of Appeals. Segal also claims that the automatic stay

arising in both bankruptcy cases gave SSR the opportunity to intervene in the state court foreclosures

proceedings. According to Segal, as a result of SSR taking advantage of the automatic stay, Segal

was forced to endure a trial in the Law Division of the New Jersey Superior Court, two appeals to

the Appellate Division, as well as Petitions for Certification to the Supreme Court of the State of

New Jersey. Segal claims that as a consequence of this protracted litigation, he lost the opportunity

to sell the property for a price significantly in excess of his investment in the tax sale certificates.

In short, Segal contends that the attorneys' fees incurred in litigation with SSR and Khoudary in the

federal and state courts resulted from the two improperly filed bankruptcy cases. Thus, Segal argues

8

that an appropriate sanction is payment of all of the legal fees incurred by him.

Khoudary, on the other hand, insists that both bankruptcy cases were filed for legitimate purposes. In his opposition to Segal's sanction motion Khoudary reiterates his position that the Chapter 11 petition was filed to protect SSR's lien position on the Property. Khoudary points out that the amount due on the SSR note and mortgage exceeded $8 million, while at the time, the tax liens held by Segal approximated only $1.9 million. He continues to assert that the Chapter 11 had a valid business purpose because it provided an opportunity to satisfy Segal's tax claims and protect SSR's recently acquired lien interest. Regarding the subsequent Chapter 7 case, Khoudary states that in August, 2004, after the State Court dismissed SSR's answer to Segal's tax foreclosure complaint and denied SSR's motion to intervene in the tax foreclosure actions, Khoudary concluded that a Chapter 7 liquidation was a reasonable means to preserve SSR's investment. In his September 13, 2004 letter in opposition to Segal's sanction motion Khoudary described his rationale for the Chapter 7 case as follows:

> In light of the large investment made, and since the Bankruptcy Court previously held that the reorganization was an unavailable option, I made a decision that liquidation was reasonable. As a result, I filed the Chapter 7 Bankruptcy realizing that I could liquidate the asset, selling either the land or even the mortgage instruments by themselves. This would preserve the overall investment capital and protect against the potential loss of the asset by the foreclosure actions instituted by Mr. Segal. A Chapter 7 liquidation is completely feasible because the asset is sellable.

(Sept. 13, 2004 Letter in Opposition to Motion for Sanctions ("Letter Opp. p. 4") Khoudary continues to adhere to this view.)

Finally, more recently, Khoudary asserts that sanctions are not appropriate because Segal obtained a windfall as a result of the Appellate Division's affirmance of the trial court's denial of SSR's motion to intervene in the tax foreclosure proceedings. Presumably, to demonstrate that he

9

and SSR are the real losers in these protracted legal proceedings, Khoudary states:

> The Court need to keep in mind that Carol Segal is making of $4,000,000 and in fact he is currently marketing the property for $12,000,000 which would make his profit in the nature of $10,000,000. This causes a super windfall to Carol Segal.
>
> In comparison, Schaefer Salt Recovery, Inc., has lost its initial investment in a first mortgage, counsel fees of approximately $150,000 and the ability to redeem the real estate taxes. If title was acquired, Carol Segal would be reaping a 24% interest rate on tax liens that were acquired at a discount. Mr. Segal's profit would have more that doubled his money in a very short period of time since he acquired tax liens at a discount. Both investments were high risk and speculative.

(May 15, 2009 Nicholas Khoudary Supplemental Certification ¶¶ 3 & 4.)

Following remand, Segal filed (i) a brief in support of imposing sanctions against SSR and Khoudary and (ii) a certification of fees describing the legal services rendered by Segal's attorneys. Segal requested that the full amount of all legal services he incurred be imposed as a sanction. The breakdown is as follows:

| | | | |
|---|---|---|---|
| a) | Chapter 11 case | $ 17,748.50 | fees |
| | | $ 342.10 | expenses |
| b) | Chapter 7 case | $ 9,239.00 | fees |
| | | $ 67.90 | expenses |
| c) | Motion for Reconsideration | $ 2,322.00 | fees |
| | | $ 0 | expenses |
| | Appeal | $ 12,923.50 | fees |
| | | $ 1,246.42 | expenses |
| d) | Sanctions Remand | $ 8,920.00 | fees |
| | | $ 36.22 | expenses |
| e) | Third Circuit taxed costs | $ 589.80 | |
| f) | State Court Tax Foreclosure | $ 222,349.12 | fees and expenses |

## CONCLUSIONS OF LAW

On remand the issue before the court is not whether sanctions should be imposed against Khoudary and SSR. This court has already determined that sanctionable conduct occurred. The issues that require examination are what law should be applied to this matter and what legal fees and expenses should be granted as a sanction in connection with the Chapter 7 case before this court. As set forth below, the court finds that sanctions may be properly awarded against Khoudary and SSR under either Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927 or the court's inherent authority. However, the court declines to award sanctions against Khoudary and SSR in the form of attorney fees and expenses (i) for filing the Chapter 11 case, (ii) for their conduct in the tax foreclosure proceeding in the State Court, or (iii) the appellate costs Segal incurred as a result of this court's denial of his request for fees in the Chapter 7 case.

### A.    Sanctionable conduct

Sanctions may be properly awarded against Khoudary and SSR under Bankruptcy Rule 9011, the court's inherent power to sanction, or under § 1927, as the Chapter 7 petition was plainly filed for an improper purpose. The Chapter 7 case was filed only 37 days after the dismissal of SSR's Chapter 11 case. Khoudary and SSR were well aware that the Chapter 11 case was dismissed because it was not a proper use of Chapter 11. The Chapter 7 case was filed on the very same day that the State Court (i) struck SSR's answers in the tax foreclosure proceeding, (ii) directed that the tax foreclosure proceed as an uncontested matter, and (iii) barred SSR from continuing its efforts to sell the SPI property. The Chapter 7 filing, consisting of a bare petition, and was obviously filed solely to obtain the benefit of the automatic stay. In short, SSR and Khoudary once again used a bankruptcy filing as a litigation weapon to delay the State Court Action.

This conduct certainly suffices for a finding that the Chapter 7 petition was filed for an improper purpose. Under Bankruptcy Rule 9011(b) this court's focus is on whether the Chapter 7 petition was filed after "an inquiry reasonable under the circumstances" was made by Khoudary and SSR such that the petition was not "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011. In *Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir. 1985) the Third Circuit upheld the bankruptcy court's grant of counsel fees to a creditor under Bankruptcy Rule 9011. The court noted that both parties "had been bickering and squabbling for years in the state courts." 774 F.2d at 586. It further observed that the filing of the Chapter 11 "was precipitated, not by a desire, or need for reorganization, but simply to stave off a sheriff's sale..." *Id.* In fact, debtor's counsel conceded that the purpose of the filing was to simply stay the sheriff's sale so that the debtor could reconcile the amount owed. *Id.* On these facts, the court found that the sanction award met the intent and spirit of Bankruptcy Rule 9011. *Id.*

Similarly, sanctioning Khoudary and SSR in the amount of the counsel fees incurred by Segal as a result of the improper Chapter 7 petition is appropriate. Like the debtor in *Cinema Service* there was no bankruptcy purpose for SSR's Chapter 7 petition. It didn't need debt relief, but it did need the automatic stay in order to delay the conclusion of the uncontested tax foreclosure.

The goal of Bankruptcy Rule 9011 sanctions is deterrence and in imposing a sanction the court should award the least severe sanction likely to meet that purpose. *In re Rainbow Magazine, Inc.*, 136 B.R. 545, 555 (9th Cir. BAP 1992) (citing *Jackson v. Law Firm of O'Kara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989)). The fees incurred by Segal in seeking dismissal of the Chapter 7 case, requesting sanctions and moving for reconsideration of this court's decision are all reasonable. The hourly rates of the attorneys involved ranged from $360.00 per hour

to $210.00 range, and most of the services were rendered in the $300.00 to $210.00 range. A review of the billing invoices contain a sufficient description of services so that the court is readily able to ascertain that excessive services were not rendered. In short, the fees incurred are reasonably related to the services provided.

The court believes that awarding Segal the $9,239.00 for fees and $67.90 for expenses he incurred in connection with the Chapter 7 case and the $2,322.00 for the motion for reconsideration are the least severe sanction that will deter Khoudary and SSR from like conduct in the future. The Chapter 7 case must be considered in the context of the prior Chapter 11 and the State Court litigation. In dismissing the Chapter 11 case this court made it known that it considered the case to be lacking a reorganizational purpose. This alone certainly should have caused Khoudary and SSR to pause and consider whether the Chapter 7 case had an actual bankruptcy purpose. Given the timing of the filing and the events outlined above that precipitated the filing, it is readily apparent that they made no objective assessment of the bankruptcy purpose that could be achieved from a Chapter 7 case. Only a monetary sanction will have sufficient "bite" to deter similar conduct in the future. Further, because the fees incurred by Segal are reasonable both as to the amount and the scope of services rendered, they are not so great as to impose a penalty.

But the court also finds that Khoudary in particular acted with subjective bad faith, and for that reason the same monetary sanction can be imposed against him under either the court's inherent power to sanction or § 1927. Khoudary is no stranger to the bankruptcy court, having appeared before this court on several prior occasions. He can be presumed to be conversant with the Bankruptcy Code and Rules, as well as applicable case authority. The filing of the Chapter 7 case approximately one month after the dismissal of the Chapter 11 case demonstrates a studied disregard of the purpose of a Chapter 7 filing and a calculated intent to misuse the bankruptcy process to obtain

the benefit of the automatic stay in order to delay the tax foreclosure proceeding in the State Court.

Had Khoudary genuinely intended to use the Chapter 7 case to liquidate the few debts which SSR owed, he could have filed a complete petition so that case administration by a trustee could commence promptly. After all, the Chapter 11 schedules had been filed but a few weeks earlier and could have been easily adapted to the Chapter 7 case. Further, Khoudary's argument that he could use the Chapter 7 case to either sell the real estate or the mortgage and default judgement is implausible and appears to be an after-the-fact effort to create a rationale for filing the Chapter 7 case. Khoudary well knows that the Chapter 7 trustee, not Khoudary or SSR, is the party responsible for liquidating estate assets, and that the trustee makes those judgments based on benefit to the bankruptcy estate, not the debtor. Moreover, it is unlikely that a trustee would have viewed SSR's mortgage and default judgment as valuable given the reality that the tax foreclosure was proceeding as an uncontested matter. Additionally, if the case remained pending the Chapter 7 estate would consist solely of the mortgage and judgment. Thus, SSR did not have an ownership interest in the SPI Property and a case trustee would not have acquired an ownership interest that could be sold. As an attorney, Khoudary must know that a trustee cannot sell property in which the bankruptcy has no interest. The prospect that a trustee could cause the sale of the Property to satisfy the mortgage acquired by SSR is equally implausible given the bar imposed by the State Court. This meritless proffered rationale further evidences that Khoudary really commenced the Chapter 7 filing merely to stay the tax foreclosure proceeding. It can be no coincidence that after the Chapter 7 was dismissed SSR once again filed a motion to intervene in the tax foreclosure proceeding. Obviously, the time SSR spent in Chapter 7 afforded Khoudary the opportunity to prepare motion papers.

This intentional and calculated misuse of the bankruptcy process is what caused this court to determine that Khoudary's filing of the SSR Chapter 7 petition unreasonably and vexatiously

multiplied the proceeding before the court.

It is well established in this circuit that four elements are required for the assessment of sanctions under § 1927. Sanctions may be imposed "where an attorney has (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or intentional misconduct." *LaSalle Nat'l Bank v. First Connecticut Holding Group*, 287 F.3d 279, 288 (3d Cir. 2002) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002)). These criteria easily apply to Khoudary's misuse of the bankruptcy process by filing the Chapter 7 case. Regrettably, the sanction is limited to the costs resulting from the vexatious conduct. *Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania*, 103 F.3d 294, 297 (3d Cir. 1996). Here, the excess costs are those incurred by Segal as a result of SSR's Chapter 7 case. Segal would have incurred no legal fees "but for" Khoudary's improper filing of the SSR Chapter 7 petition.

Though not raised by Khoudary in his opposition to Segal's post-remand request for sanctions, the court notes that there is authority which holds that § 1927 is designed to merely prevent multiplication of proceedings within a particular lawsuit.[4] *See, DeBanche v. Trani*, 191 F.3d 499, 511-12 (4th Cir. 1999) ("we conclude as a matter of law that the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously and therefore that § 1927 cannot be employed to impose sanctions"); *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) ("It is only possible to multiply or prolong proceedings after the complaint is filed."(citation omitted)).

However, other courts have imposed sanctions under § 1927 where a second action was

---

[4]Section 1927 provides that "any attorney ... who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously maybe required by the court to satisfy personally such excess costs." 28 U.S.C. § 1927 (emphasis supplied)

commenced by the losing party in the first action. In *Hagerty v. Succession of Clement*, Hagerty

argued to the Louisiana Supreme Court that the trial court's refusal to grant a fourth adjournment

of the trial deprived him of due process of law. 749 F.2d 217, 219 (5th Cir. 1984). Both appellate

courts rejected his arguments. *Id.* As a result, Hagerty then commenced an "action under 42 U.S.C.

§ 1983 in the United States District Court asserting the same alleged deprivation of due process."

*Id.* The District Court dismissed the complaint and Hagerty filed an appeal with the Fifth Circuit

Court of Appeals, which affirmed the District Court. *Id.* at 219-20. The Fifth Circuit also granted

the defendants request for sanctions against Hagerty's attorney under § 1927. *Id.* at 222. The court

found the appeal frivolous because the attorney completely failed to address the primary basis of the

district court's decision. *Id.* at 223. Additionally, it held that the appeal "unreasonably and

vexatiously multiplied the proceedings in a case that has been in the courts for more than six years."

*Id. See also Kansas Public Employees Retirement Sys v. Reimer Kroger Assocs.,* 165 F.3d 627, 629-

30 (8th Cir. 1999) (sanctions under § 1927 imposed for commencing state court suit after losing on

the same issue in the United States District Court). In both of the matters just described, the courts

seem to have viewed the "case" broadly. "In these contexts "case" might fairly be interpreted to

refer to the cause of action, rather than the court docket filing." GREGORY P. JOSEPH, SANCTIONS:

THE FEDERAL LAW OF LITIGATION ABUSE § 23(A)(2) 3-20 (4th ed. 2010).

This court is persuaded that the broader approach is more appropriate as it captures the full

range of abuse that can result from a proliferation of litigation that abuses court process. Further,

it comports with the historical application of the statute:

> Historically § 1927 has targeted the abusive proliferation of
> proceedings in federal court. The 1813 Senate Committee that
> drafted the predecessor legislation was appointed to seek a legislative
> solution "to prevent multiplicity of *suits or processes*, where a *single
> suit of process* might suffice ..."26 Amma's of Cong. 29 (1813)
> (emphasis added). The statute was originally drafted so that any

person who "multiplied the proceeding *in any cause* ... so as to
increase costs unreasonably and vexatiously" could be held liable for
the "excess of costs so incurred." Act of July 22, 1813, *3 Stat. 21*
(emphasis added).

A letter from the Secretary of the Treasury to the House of
Representatives in 1842, about 29 years after the statute was enacted
and 11 years before it was amended, suggests that the 1853
amendment to the statute was prompted by the practice of certain
United States Attorneys – who were paid on a piecework basis – who
had apparently filed *unnecessary lawsuits* to inflate their
compensation. H.R. Doc. No. 25, 27th Cong., 3d Sess., 21-22 (1842),
See *Roadway Express Inc. v. Piper,* 447 U.S. 752, 759 n. 6, 100 S. Ct.
2455, 65 L. Ed. 2d 488 (1980). When the statute was amended in
1853, it took on its present cast, prohibiting any attorney from
"multipl[ying] the proceedings in a case unreasonably and
vexatiously," although it remained for the 1980 Congress to expand
its scope to encompass attorneys' fees and expenses in addition to
statutory costs. Pub. L. 96-349, § 94 State. 1156.

*Id.* at 3-18 - 03-19.

Accordingly, this court finds that it is within its authority to impose attorney fees against Khoudary

as a result of his improper filing of the Chapter 7 petition for SSR.

Finally, even where Rule 9011 and § 1927 are unavailable to the court as vehicles for

imposing sanctions, the court finds that its inherent authority may be relied upon. In *Chambers v.*

*NASCO, Inc.,* 501 U.S. 32, 46 (1991), Justice White observed that "...whereas each of the other

mechanisms [sanctioning statutes and rules] reaches only certain individuals or conduct, the inherent

power extends to a full range of litigation abuses." Acknowledging that the inherent powers are

essential for a court to control the conduct before then, a number of courts recognize the bankruptcy

court's authority to sanction for abuse of the judicial process. *See in re Rainbow Magazine, Inc.,* 77

F.3d 278, 285 (9th Cir. 1996); *Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1574 (11th Cir. 1995);

*Fellheimer, Eichen & Braverman, P.C. v. Charter Tech. Inc.,* 57 F.3d 1215, 1228 (3d Cir. 1995);

*Courtesy Inns,* 40 F.3d 1084, 1089 (10th Cir. 1994); *Citizens Bank & Trust Co. V. Case (In re Case),*

937 F.2d 1014, 1023 (5th Cir. 1991*).*

The existence of Rule 11 and other statutory sanctions does not eviscerate the courts inherent power to sanction. *FE & B v. Charter Technologies, Inc.*, 57 F.3d at 1224. However, use of the court's inherent power to sanction requires a finding of bad faith. *Id.* at 1225. As repeatedly set forth above, the court has found that the facts establish a calculated and intentional misuse of the Chapter 7 process, in that the purpose of the petition was solely for delay. Thus, Khoudary and SSR have acted in bad faith because they used the bankruptcy court for an improper purpose. For this conduct, the costs incurred by Segal as a result of the Chapter 7 filing is a reasonable sanction.

The court does not find it appropriate to assess monetary sanctions against Khoudary and SSR for the Chapter 11 case filed on May 12, 2004. The dismissal of the Chapter 11 case shortly after its commencement was the sanction imposed. Essentially, this court found that the Chapter 11 was not a good faith filing.[5] In the course of the hearing the court determined that the Chapter 11 petition appeared to have been filed as an offensive weapon, and that this was not a proper use of Chapter 11. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 122 (3d Cir. 2004) (the good faith requirement ensures that the Bankruptcy Code's careful balance of interests is not undermined by those whose aims are antithetical to bankruptcy purposes). At the time, the court believed dismissal of the case to be sufficient. Notably, it struck from the dismissal order supplied by Segal the language that would have imposed a 180 day bar for any subsequent filing of a petition. No motion for reconsideration or request for additional sanctions was made, no appeal was filed by either party and the dismissal order became a final order. The doctrine of claim preclusion prevents Segal from now requesting attorney fees and expenses as a sanction for the SSR Chapter 11 petition. "Claim preclusion ... gives dispositive effect to a prior judgment, if a particular issue, although not

---

[5] It is held that good faith is an implied jurisdictional requirement for filing a Chapter 11 case. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997).

18

litigated, could have been raised in the earlier proceeding. *Bd. of Tr. of Trucking Emp. Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992)

Nor can the court award as a sanction the legal fees and costs incurred by Segal in connection with his appeal of this court's order to the District Court and thereafter to the Third Circuit. The Supreme Court decision in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) is instructive on this point. In that matter the D.C. Circuit Court of Appeals had considered and affirmed certain sanctions imposed by the District Court. In addition, it remanded the matter to the District Court to determine the amount of legal fees that could be awarded in favor of respondents and against petitioner for defending on appeal the sanctions awarded by the District Court. 496 U.S. at 405. When the matter was before the Supreme Court it reversed the imposition of respondent's appellate legal fees as a sanction . It found that by its plain language Rule 11 does not apply to appellate proceedings. *Id.* at 406. It particularly noted that Rule 11 provides that the rules govern only proceedings in the District Courts. With regard to the argument that no appellate expense would have been incurred if petitioners lawsuit had not been filed, the Supreme Court stated:

> This line of reasoning would lead to the conclusion that expenses incurred "because of" a baseless filing extend indefinitely ... We believe Rule 11 is more sensibly understood as permitting an award only of those expenses directly caused by the filing, logically those at the trial level.

496 U.S. at 406. *See also Waltz v. City of Lycoming*, 974 F.2d 387, 390 (3d Cir. 1992). Arguably, in the matter before this court awarding sanctions for the costs of the appellate process is even less compelling since it was this court's legal error that caused Segal to appeal to the District Court and then to the Third Circuit. Neither appeal was initiated by Khoudary or SSR.

Nor does the court believe that 28 U.S.C. § 1927 or the court's inherent power provide sound authority to impose appellate costs as a sanction. Like Rule 11 and Bankruptcy Rule 9011, both §

1927 and the Court's inherent power to sanction arise from conduct that occurs before the court

considering the sanction – not conduct in some other court. *Matter of Case,* 937 F.2d 1014, 1023

(5th Cir. 1991). Thus, in *Case,* the Fifth Circuit found that the bankruptcy court's award of fees

relating to the bankruptcy case was not an abuse of discretion, but that there was no valid basis to

award the attorneys fees incurred by the creditor in the state court litigation. *Id.* With regard to the

court's inherent authority to sanction, the Fifth Circuit pointed out that "[t]he conduct of the parties

in the state action cannot be said to affect the exercise of the judicial authority of the bankruptcy

court or limit the bankruptcy court's power to control the behavior of parties and attorneys in the

litigation before it." *Id.* at 1023-24. Equally, with regard to § 1927, the Fifth Circuit simply

observed that the statutory language is limited to attorney actions that multiply the proceedings in

the case before the court. *Id.* at 1023. *See also In re Spectee Group, Inc.,* 185 B.R. 146, 162 (Bankr.

S.D.N.Y. 1995) (sanctions motion is not a means to recover compensation for every injury that

sanctionable conduct produces); *In re Eighty Lake, Inc.,* 63 B.R. 501, 510-11 (Bankr. C.D. Cal.

1986) (Rule 9011 sanctions calculated solely on fees and costs devoted exclusively to bankruptcy

issues).

Also lacking merit is Segal's suggestion that attorneys fees and costs incurred in the State

Court Action should be awarded to him to compensate him for his lost business opportunity.

In *Business Guides, Inc. v. Chromatic Commc'ns Enter., Inc.,* 121 F.R.D. 403 (N.D. Cal. 1988) the

defendant sought sanctions for a frivolous copyright infringement action. It requested not only its

legal fees but also damages for its loss of business. The District Court held that damages for loss

of business is not within the scope of Rule 11 and may only be sought through a collateral action.

*Id.* at 406. When the matter reached the Supreme Court, the court reaffirmed its rejection of the

notion that Rule 11 creates a federal common law of malicious prosecution, and expressed its

20

confidence that the districts courts "will resist the temptation to use sanctions as a substitute for tort damages." *Business Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 531, 553 (1991). Further, it cited the District Court's decision in *Business Guides* as an appropriate example of judicial judgment. *Id.* at 553-54.

In *Elliot v. M/V Lois B,* 980 F.2d 1001, 1004 (5th Cir. 1993) a Rule 11 sanction was awarded by the District Court in the form of legal fees of $35,000 and the $60,000 sale price received by the sanctioned party after she fraudulently obtained and sold a tugboat. The Fifth Circuit affirmed the award of legal fees, but reversed the $60,000 award, stating that "Rule 11 sanctions should not be assessed as a substitute for tort damages." *Id.* at 1007.

Further, this court does not find that either § 1927 or the court's inherent power provides an alternative route by which Segal can obtain the legal fees incurred in the State Court Action. As noted earlier in this opinion § 1927 and the court's inherent power are directed toward misconduct that occurs before the court considering the sanction. Thus, for example in *In re Virginia Mansions Apartments, Inc.*, 1992 WL 391232, at *6 (Bankr. W.D. Pa. Dec. 22,1992) it was well within the bankruptcy court's authority to impose as a § 1927 sanction all of the fees and costs incurred in the bankruptcy proceeding. Importantly, both § 1927 and the court's inherent authority require consideration of the bad faith of an attorney or a party. *See Baker Indus., Inc. v. Cerebus Ltd,,* 764 F.2d 204, 208 (3d Cir. 1985) (bad faith finding required as a precondition to award of attorney fees under § 1927); *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech,, Inc.,* 57 F.3d 1215, 1225 (3d Cir. 1995) (use of the court's inherent power to sanction requires a finding of bad faith). The bad faith inquiry is fact-intensive, and is best done first hand and restricted to the matter before the court.

Additionally, sanction remedies exist in the New Jersey Courts. N.J. Court Rule 1:4-8

explicitly addresses frivolous litigation and sanctions that can be imposed. Had Segal desired fees

and costs in the State Court Action he surely could (and should have) sought them. It is a usurpation

of the authority of the State Court for this court to find that the conduct of litigation before the State

Court is sanctionable. Furthermore, to the extent that Segal seeks tort damages the reasoning of

*Business Guides* applies to § 1927 and the court's inherent power to sanction. No sanctioning power

should be employed as a substitute for a tort action. In that regard, the court notes that N.J.S.A

2A:15-59.1 provides for an award of litigation costs and reasonable attorney fees if there is a finding

that a "complaint counterclaim, cross-claim or defense of the non-prevailing person was frivolous."

In short, appropriate avenues for recovery were available to Segal in the State Court Action.


## CONCLUSION

For the reasons set forth above, the court finds sanctions may be awarded against Khoudary

and SSR only in connection with the improperly filed Chapter 7 petition. Segal is awarded fees as

follows:

| | | | |
|---|---|---|---|
| a) | Chapter 7 case | $9,239.00 | fees |
| | | $   67.90 | expenses |
| b) | Motion for Reconsideration | $2,22.00 | fees |

Very truly yours,

*Novalyn L. Winfield*

NOVALYN L. WINFIELD
United States Bankruptcy Judge


NLW/amd


22